# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA GRAY,<br><br>　　　　　　Plaintiff,<br><br>　　　v.<br><br>A. KHOO, et al.,<br><br>　　　　　　Defendants. | Case No.  1:20-cv-01047-DAD-SAB (PC)<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSING CERTAIN CLAIMS AND DEFENDANTS<br><br>(ECF No. 24)<br><br>OBJECTIONS DUE WITHIN THIRTY DAYS |

Plaintiff Dana Gray is proceeding *pro se* and *in forma pauperis* in this civil rights action pursuant to 42 U.S.C. § 1983.  Currently before the Court is Plaintiff's second amended complaint, filed December 21, 2020.  (ECF No. 24.)

## I.

## SCREENING REQUIRMENT

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity.  28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that "fail[] to state a claim on which relief may be granted," or that "seek[] monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).

A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell

Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)).  Moreover, Plaintiff must demonstrate that each defendant personally participated in the deprivation of Plaintiff's rights.  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).

Prisoners proceeding pro se in civil rights actions are entitled to have their pleadings liberally construed and to have any doubt resolved in their favor.  Wilhelm v. Rotman, 680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  To survive screening, Plaintiff's claims must be facially plausible, which requires sufficient factual detail to allow the Court to reasonably infer that each named defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678-79; Moss v. U.S. Secret Service, 572 F.3d 962, 969 (9th Cir. 2009).  The "sheer possibility that a defendant has acted unlawfully" is not sufficient, and "facts that are 'merely consistent with' a defendant's liability" falls short of satisfying the plausibility standard.  Iqbal, 556 U.S. at 678; Moss, 572 F.3d at 969.

**II.**

**ALLEGATIONS IN FIRST AMENDED COMPLAINT**

The Court accepts Plaintiff's allegations in the complaint as true only for the purpose of the *sua sponte* screening requirement under 28 U.S.C. § 1915.  Plaintiff brings this action against A. Khoo, R. Mitchell, I. Singh, B. Showalter, G. Song, and Antinello based on the denial of her request for revision surgery and follow up with a neurologist.

On June 4, 2018, Plaintiff had a 4 level lumbar fusion by a neurosurgeon, Dr. M. Senegor.  (Sec. Am. Compl. ("SAC"), 6, ECF No. 24.)  On January 17, 2018, Defendant Showalter noted that the primary care provider is responsible to determine diagnostic tests and recommendations by specialists.  (Id.)  Plaintiff had a follow up with Dr. Senegor, her Neurontin was increased and was to be continued.  (Id.)  Plaintiff was completely off opioids by March 9, 2018.[1]  (Id.)

On March 14, 2018, plaintiff had a lumbar spine x-ray that showed mild nonspecific lucency around the L4-5 screws.  (Id.)  Plaintiff had a follow up with Dr. Senegor on July 2,

---

[1] Plaintiff's previous complaints alleged that she had excellent recovery, was off all morphine pain management, and she was receiving Gabapentin for pain, had a TENS unit, and was receiving physical therapy.  (Comp. 14, ECF No. 1; Fir. Am. Compl. 5, ECF No. 17.)

1  2018, and had "compression stress" type pain in her lumbar spine.  (Id.)

2       In August 2018, Plaintiff told Defendant Khoo that she was having left hip pain,

3  paraspinal and left hip tenderness, and bilateral numbness on the soles of her feet with activity.

4  (Id.)  Plaintiff had an x-ray on September 7, 2018, that showed "question of right S1 screw

5  lucency raising possibility of loosening.  (Id.)  Defendant Khoo discussed the x-ray with Plaintiff

6  on September 17, 2018, and submitted a request for evaluation with a neurosurgeon.  (Id.)

7       On October 15, 2018, Plaintiff had a follow up with Dr. Senegor who told her that the

8  September 7, 2018 x-ray showed bone resorption at the right S1 screw and failed L5-S1 fusion

9  which were likely to be the cause of her lower back pain and recommended that she return in one

10  year with a follow up CT scan.  (Id. at 6-7.)  She was to not sit or stand for over one hour; not

11  bend, stoop, or twist excessively; and if there was no improvement within the next three to six

12  months she would need revision surgery.  (Id. at 7.)  Plaintiff filed a grievance requesting a

13  follow up with a neurosurgeon that was partially granted.  (Id.)  She was to continue Neurontin,

14  provided orthotics and an eggcrate mattress.  (Id.)

15      Plaintiff had a CT scan of the lumbar spine on November 15, 2018, that did not show

16  screw lucency or a failure of the fusion.  (Id.)

17      On December 19, 2018, Plaintiff had a lumbar spine x-ray which did not show any loose

18  screws or a failed fusion.  (Id.)

19      Plaintiff was seen by Dr. Senegor for a one year post-operative appointment on January

20  7, 2019.  (Id.)  Dr. Senegor recommended that pain management be reinstated and that Plaintiff

21  have revision surgery in two stages for the failed fusion and S1 screw replacement.  (Id.)

22      Plaintiff saw Defendant Khoo on January 10, 2019, complaining of increased lower back

23  pain and insomnia and requested surgery and reinstitution of opiate pain management.  (Id.)

24  Defendant Khoo submitted a request for medical services for Plaintiff to receive revision surgery

25  and ordered morphine two times per day and at bedtime for severe pain for fourteen days, but

26  denied opiate pain management because Plaintiff was on Gabapentin and Naproxen.  (Id.)

27  Defendant Khoo did not list the InterQual criteria on the request or in his progress notes.  (Id.)

28      On January 15, 2019, the pain management committee discussed the InterQual criteria.

(Id.)

On January 16, 2019, Plaintiff was seen by Dr. Glass in mental health for a pain management evaluation, coping mechanisms, and medical allergies.  (Id.)

On January 17, 18, and 19, 2019, LVNs recorded observations of Plaintiff's pain and activities of daily living without interviewing her or doing a physical assessment of her pain levels.  (Id.)

On January 22, 2019, a pain management note was entered with no interview or physical assessment.  (Id.)

On January 22, 2019, Defendant Antinello interviewed Plaintiff for her inmate appeal. (Id.)  Defendant Antinello noted the September 7, 2018 and  December 19, 2018 x-rays and the November 15, 2018 CT scan finding "no conclusive evidence of loose or broken hardware." (Id.)  Defendant Antinello evaluated Interqual criteria and found that Plaintiff did not meet any of the InterQual criteria, relying on the observations of LVNs although Plaintiff met 3 of the 6 criteria.  (Id. at 7-8.)

On January 23, 2019, Defendant Khoo discontinued morphine.  (Id. at 8.)

On January 29, 2019, Defendant Khoo submitted a request for services seeking revision surgery that did not address the InterQual criteria.[2]  (Id.)

On February 13, 2019, Plaintiff saw Defendant Khoo for lower back pain and nerve pain in the right leg and was told that revision surgery had been denied but that he would discuss the InterQual criteria with Defendant Singh and present the request at the MAR meeting, but did not do an InterQual criteria examination.  (Id.)

On February 21, 2019, the MAR committee was presented with the request for a repeat lumbar spine surgery/fusion and the committee reviewed the November 15, 2018 CT scan that did not document the screw lucency, and did not inquire into the discrepancy or order a re-read and there was no mention of the InterQual criteria.  (Id.)

On March 5, 2019, Defendant Khoo told Plaintiff that the request for services was denied

---

[2] Plaintiff states that there were questions about the request for services on January 31, 2019, and on February 4, 2019, at the second and third level, but the allegation is vague as to what occurred.  (SAC at 8.)

4

1  because Defendants Mitchell and Singh said the screw was not falling out.  (Id.)  Defendant

2  Khoo was to inquire about a follow up with a neurosurgeon.  (Id.)

3      On March 19, 2019, Defendant Singh interviewed Plaintiff for her inmate grievance

4  about Defendant Antinello and the first revision denial.  (Id.)  Plaintiff informed Defendant

5  Singh that the November 15, 2018 CT scan failed to mention the screw lucency found in the

6  September 7, 2018 lumbar spine x-ray.  (Id.)  Defendant Singh told Plaintiff that she needed a

7  second opinion and that if the second opinion agreed with Dr. Senegor that she needed revision

8  surgery she would definitely receive it.  (Id.)  Defendant Singh ordered a lumbar spine x-ray.

9  (Id.)  Plaintiff saw Defendant Khoo on this date to have her pain medication changed due to

10  having a severe reaction to Lyrica and they discussed the second opinion by a neurosurgeon.

11  (Id.)

12      On March 20, 2019, the request for a second opinion was approved and Plaintiff was to

13  see Dr. Taggard.  (Id.)  On March 26, 2019, an addendum was added to Plaintiff's November 15,

14  2018 CT scan which confirmed the right S1 screw lucency.  (Id.)

15      Plaintiff had a lumbar spine x-ray that showed a fracture of the S1 screw and potential

16  loose right S1 screw.  (Id. at 9.)

17      On April 5, 2019, Plaintiff saw Defendant Singh to discuss the second opinion by the

18  neurosurgeon, the March 29, 2019 lumbar spine x-ray, and her inmate appeal.  (Id.)  Plaintiff was

19  still taking Gabapentin.  (Id.)

20      On April 15, 2019, Defendant Khoo reviewed the lumbar spine x-ray showing the

21  fractured screw and they discussed Plaintiff's increased pain and burning from the left buttocks

22  to the sole of the foot.  (Id.)

23      Plaintiff received a second neurosurgery consult on June 12, 2019, and a CT scan was

24  ordered.  (Id.)

25      On June 18, 2019, Defendant Khoo ordered a CT scan and discussed the InterQual

26  criteria finding that Plaintiff now met all the criteria due to the fractured screw.  (Id.)

27      Plaintiff had a CT scan on July 11, 2019, that showed a left SI screw fracture and

28  abnormal lucency around the right screw.  (Id.)

1    Plaintiff had a telemed appointment on July 30, 2019, and Dr. Taylor noted that Plaintiff

2   was able to hop on and off the exam table although Plaintiff was assisted by nursing.  (Id.)

3    On August 1, 2019, Defendant Mitchell told Plaintiff that Gabapentin was discontinued

4   statewide and to have Defendant Khoo present it to the pain management committee to see if it

5   could be continued for her.  (Id.)

6    On August 22, 2019, Defendant Khoo told Plaintiff that Gabapentin was to be tapered per

7   Defendant Mitchell.  (Id.)

8    On August 28, 2019, Plaintiff was seen by Dr. Taggard who recommended revision

9   surgery, ordered 10 days of Tramadol pre-op, and scheduled surgery.  (Id.)

10    On September 6, 2019, Defendant Khoo submitted a request for services for revision

11   surgery leaving the InterQual criteria off the request.  (Id.)  On September 10, 2019, Defendants

12   Mitchell, Singh, and Showalter failed to ensure that the InterQual criteria was on the request for

13   services prior to submitting it for approval.  (Id.)

14    On October 1, 2019, Defendant Song denied Plaintiff's appeal because of the July 30,

15   2019 note that Plaintiff could hop on and off the examination table.  (Id.)

16    On November 1, 2019, Plaintiff discussed the fact that InterQual criteria was not included

17   on the request for services with Defendant Mitchell.  (Id.)  Defendant Mitchell told Plaintiff to

18   lose weight and then he would reconsider the radiology study to see if the lumbar hardware was

19   loosening.  (Id.)

20    On December 27, 2019, Plaintiff saw Defendant Khoo for the denial of opioids by the

21   pain management committee and he told her that she would continue to receive 400 mg. of

22   Gabapentin and that it was still being tapered to discontinue.  (Id.)  Plaintiff told Defendant Khoo

23   that she did not have any fall or trauma in 2019.  (Id.)  Plaintiff was told that Defendant Mitchell

24   was denying her all pain management but was not given a reason why.  (Id.)  Defendant Khoo

25   stated that he would not submit a request for a follow-up with Dr. Taggard because there was no

26   reason since her request for surgery had been denied.  (Id.)  Defendant Khoo agreed to submit

27   another request for services and she was told that custody was to evaluate her pain and call them.

28   (Id.)

On December 31, 2019, Plaintiff saw her mental health provider for severe depression over the denial of her surgery and re-evaluation and her pain.  (Id.)

On January 2, 2020, Defendants Song and Showalter documented on the denial of the request for a neurosurgery evaluation that Plaintiff's request had already been denied by the SMART committee.  (Id.)  Defendant Khoo wrote on the request that he did not know that the neurosurgeon denies to see Plaintiff again because the surgery had been denied by Defendant Song.  (Id.)

On January 6, 2020, Plaintiff spoke with housing staff who told her they were aware that medical had directed custody staff to falsely report on her activities of daily living by email rather than CDCR 128B chronos and that the lieutenants were requesting the documentation.  (Id.)  Plaintiff was seen by her mental health provider on this date for uncontrollable anxiety due to the unrelieved pain and insomnia.  (Id.)  Her mental health provider emailed Defendant Khoo to ask him to help her get the relief she needs.  (Id.)  Defendant Khoo responded that Plaintiff's pain was not that severe and that she was faking it. (Id. at 11.)

On January 8, 2020, Plaintiff was told that her request for a follow up with the neurosurgeon had been submitted and denied by Defendant Showalter on January 2, 2020, and Defendant Khoo refused to submit any more requests for care by a neurosurgeon.  (Id.)  Nurse Lee informed Plaintiff that she did not meet the InterQual criteria for surgery.  (Id.)

On January 9, 2020, Defendant Antinello saw Plaintiff for worsening pain at the screw site, numbness on the soles of her feet, and rectal pressure.  (Id.)  Defendant Antinello informed Plaintiff that custody reported no discernable difficulty in ambulating, but she ordered Ketorolac IV push, but it was not for IV use.  (Id.)  Defendant Antinello told Plaintiff that her revision surgery was denied because Defendants Song and Showalter stated that the plates in her back had not moved.  (Id.)

On January 10, 2020, Plaintiff was referred to a neurologist for complex regional pain syndrome.  (Id.)

On January 23, 2020, Plaintiff was told that Defendant Khoo had not submitted a request for a re-evaluation after the denial of her surgery on January 2, 2020, and that Defendant Khoo

1   has a language barrier.  (Id.)

2       On January 28, 2020, Plaintiff spoke with Defendant Showalter about the denial of her

3   revision surgery in September 2019 and he confirmed that the surgery was denied because

4   Defendant Song found that the plates had not shifted.  (Id.)

5       On January 29, 2020, an addendum to the December 14, 2019 x-ray showed stress at

6   interface screws and bone.  (Id.)

7       On February 5, 2020, Defendant Khoo told Plaintiff that they were trying to find a third

8   neurologist but had been unable to find one.  (Id.)  Defendant Mitchell denied referral to Drs.

9   Senegor or Taggard and denied Plaintiff any narcotic pain medication and Plaintiff was only

10  allowed injections of Toradol despite it being contradicted for use in patients on Celebrex.  (Id.)

11  Defendant Khoo had Plaintiff sign a waiver for Toradol and refused to prescribe Tramadol

12  although it had been recommended by Dr. Taggard.[3]  (Id.)

13      On February 20, 2020, Plaintiff had a pain management consultation with Dr. Malhorta

14  who stated that Plaintiff needed to be seen by the neurosurgeon who did her surgery due to the

15  extent of the revision.  (Id.)

16      Plaintiff was completely off of Gabapentin by February 23, 2020.  (Id. at 12.)  On

17  February 27, 2020, Plaintiff received a response from Defendant Showalter stating that the

18  denials of the request for services had been made by the SMART committee at the state level.

19  (Id.)

20      On May 15, 2020, Plaintiff saw Defendant Khoo complaining that she was not able to

21  cross her right leg over the left while sitting in a chair without pain and sharp pain to the left

22  lumbar spine.[4]  (Id.)  Defendant Khoo told Plaintiff that he would reconsider a third request for

23  services for a neurosurgery consult, but charted that no request for services was submitted

24  because surgery can lead to premature death and he would continue conservative approaches.

25  (Id.)

26      On June 5, 2020, nurse Le told Plaintiff that he would email Defendant Khoo to find out

27  [3] Plaintiff received good relief with Toradol.  (FAC 11.)

28  [4] Plaintiff alleges that her pain was ignored, but she was prescribed Lidocaine patches.  (FAC at 12.)

1   why a request for services was not submitted.  (Id.)

2          On June 22, 2020, Plaintiff's health care appeals were closed.  (Id.)

3          An addendum to comparison x-rays was done on July 5, 2020.  (Id.)  On July 23, 2020,

4   Plaintiff saw Dr. Phan requesting a comparison reread of all lumbar spine x-rays to check on the

5   left S1 screw migration.  (Id.)  No comparison was done.  (Id.)

6          Plaintiff was told that the Ketorolac was discontinued due to a bleeding risk and no

7   replacement was given.  (Id.)

8          On August 18, 2020, a third request for services was approved by Defendant Showalter.

9   (Id.)

10         On September 18, 2020, Defendant Khoo informed Plaintiff that Gabapentin was not

11  indicated for neuropathic pain and CCHCS disallows it for this indication.  (Id.)

12         On October 20, 2020, Plaintiff was examined by Nurse Cordrey and Medical Assistant

13  King who confirmed a knot in her right lumbar spine and burning in the S1 area.  (Id.)  A lumbar

14  spine x-ray was ordered.  (Id.)

15         The October 27, 2020 x-ray confirmed a displaced left S1 screw fracture.  (Id.)

16         On November 6, 2020, Plaintiff had a telemed consult with Dr. Segal.  (Id.)  Dr. Segal

17  had an obvious stroke and was so incoherent that the nurse and Plaintiff could not understand

18  him.  (Id.)  Dr. Segal failed to address the L5-S1 fusion and revision plan and recommended only

19  to remove all existing hardware, leaving Plaintiff's scoliosis and failed fusion unsupported and

20  did not tell Plaintiff that he would not be performing the surgery.  (Id.)

21         On December 1, 2020, Plaintiff had an appointment with Defendant Khoo to review Dr.

22  Segal's report.  (Id. at 13.)  Dr. Segal recommended Gabapentin and removal of all hardware but

23  not a revision surgery and Dr. Ramberg would be performing the surgery who Plaintiff has never

24  seen.  (Id.)  Defendant Khoo said he could not order Gabapentin because it would be denied by

25  Defendant Mitchell, but that he would talk to Defendant Mitchell about Plaintiff's request to be

26  seen by either Drs. Senegor or Taggard.  (Id.)

27         On December 2, 2020, Nurse Cordrey told Plaintiff that Defendant Mitchell said that it

28  was Dr. Segal or no treatment at all.  (Id.)  On December 3, 2020, Plaintiff was seen by her

1   mental health provider for depression.  (Id.)

2       Plaintiff brings this action against Defendants Khoo, Mitchell, Singh, Showalter, Song,

3   and Antinello alleging deliberate indifference to her serious medical needs and medical

4   malpractice in violation of California law seeking injunctive relief and compensatory damages.

5   **III.**

6   **DISCUSSION**

7   **A.      Section 1983**

8       Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or

9   other federal rights by persons acting under color of state law.  Nurre v. Whitehead, 580 F.3d

10  1087, 1092 (9th Cir 2009); Long v. County of Los Angeles, 442 F.3d 1178, 1185 (9th Cir. 2006);

11  Jones, 297 F.3d at 934.  There is no *respondeat superior* liability under section 1983, and

12  therefore, each defendant is only liable for his or her own misconduct.  Iqbal, 556 U.S. at 677.

13  To state a claim under section 1983, Plaintiff must demonstrate that each defendant personally

14  participated in the deprivation of her rights.  Id.; Simmons v. Navajo County, Ariz., 609 F.3d

15  1011, 1020-21 (9th Cir. 2010); Ewing v. City of Stockton, 588 F.3d 1218, 1235 (9th Cir. 2009);

16  Jones, 297 F.3d at 934.

17  **B.      Deliberate Indifference to Serious Medical Needs**

18      A prisoner's claim of inadequate medical care does not constitute cruel and unusual

19  punishment in violation of the Eighth Amendment unless the mistreatment rises to the level of

20  "deliberate indifference to serious medical needs."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir.

21  2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  The two-part test for deliberate

22  indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure

23  to treat a prisoner's condition could result in further significant injury or the 'unnecessary and

24  wanton infliction of pain,'" and (2) "the defendant's response to the need was deliberately

25  indifferent."  Jett, 439 F.3d at 1096.  A defendant does not act in a deliberately indifferent

26  manner unless the defendant "knows of and disregards an excessive risk to inmate health or

27  safety."  Farmer v. Brennan, 511 U.S. 825, 837 (1994).  "Deliberate indifference is a high legal

28  standard," Simmons, 609 F.3d at 1019; Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004),

1  and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or
2  possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096.

3  Negligence or medical malpractice do not rise to the level of deliberate indifference.
4  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at
5  105-106). "[A] complaint that a physician has been negligent in diagnosing or treating a medical
6  condition does not state a valid claim of medical mistreatment under the Eighth Amendment.
7  Medical malpractice does not become a constitutional violation merely because the victim is a
8  prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316
9  (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to
10 serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).
11 Additionally, a prisoner's mere disagreement with diagnosis or treatment does not support a
12 claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

13 At screening, the Court finds that Plaintiff has sufficiently alleged that she has a serious
14 medical condition. The issue then is whether she has alleged facts to state a cognizable claim
15 against the named defendants.

16 Plaintiff's alleges that the Defendants failed to follow the InterQual criteria for approval
17 of her surgery and failed to inquire into essential facts necessary to make ethical and professional
18 judgment. However, while the InterQual criteria may be relevant to the decision on whether
19 Plaintiff qualified for surgery, Plaintiff cannot establish deliberate indifference based on the
20 failure to follow InterQual criteria. Further, Plaintiff's allegations as to professional judgment
21 address a disagreement between her and the medical providers as to the treatment that should
22 have been provided which is insufficient to state a claim. Sanchez, 891 F.2d at 242. The issue is
23 whether the defendants were aware of her need for surgery and failed to adequately respond.
24 Simmons, 609 F.3d at 1018; Wilhelm, 680 F.3d at 1122. Therefore, Plaintiff cannot state a claim
25 based on the alleged failure to adequately include or address the InterQual criteria or her
26 disagreement with the medical professionals as tot the treatment provided.

27  1.  Denial of Revision Surgery

28  Plaintiff brings a claim against all defendants for the denial of her revision surgery. This

11

1   claim has been extensively addressed in the prior orders granting Plaintiff leave to amend her

2   complaint.  (See September 1, 2020 Screening Order 13-20, ECF No. 15, and October 14, 2020

3   Screening Order 10-17, ECF No. 18.)  Plaintiff has failed to allege facts to cure the deficiencies

4   identified in the prior screening orders.

5           **a.      Defendant Khoo**

6           Plaintiff alleges that Defendant Khoo, who is her treating provider, was deliberately

7   indifferent by denying her revision surgery.  However, as the Court previously found in the

8   September 1, 2020 and October 14, 2020 screening orders, based on the allegations in the

9   complaints, the decision on whether Plaintiff can receive a revision surgery was not made by

10  Defendant Khoo.[5]

11          Similarly, as alleged in the instant complaint, it is clear that Defendant Khoo submitted

12  multiple requests for services seeking consultations with medical providers for her complaints

13  that she was having back pain due to the failure of her revision surgery.  On August 18, 2020,

14  Plaintiff informed Defendant Khoo that she was having pain and numbness and he ordered an x-

15  ray and submitted a request for services for Plaintiff to be evaluated by a neurosurgeon.  (SAC

16  6.)  Plaintiff had a follow up with Dr. Senegor on October 15, 2018, and he recommended that

17  she return in one year with a follow up CT scan.  (Id.)  Dr. Senegor opined that if Plaintiff did

18  not improve in the next three to six months she would need revision surgery.  (Id.)  Plaintiff

19  received CT scans and x-rays in which the reports did not show any loose hardware or failure of

20  the fusion.  (Id.)

21          On January 7, 2019, Plaintiff saw Dr. Senegor and he recommended that Plaintiff have a

22  two stage revision surgery.  (Id. at 7)  On January 10, 2019, and January 29, 2019, Defendant

23  Khoo submitted a request for services for Plaintiff to receive revision surgery.  (Id.)  After the

24  revision surgery was denied, Defendant Khoo told Plaintiff that he would discuss the denial with

---

[5] In considering the claim under the Eighth Amendment against individual defendants, causation must be resolved via "a very individualized approach which accounts for the duties, discretion, and means of each defendant."  Leer v. Murphy, 844 F.2d 628, 633-34 (9th Cir. 1988) citing with approval Williams v. Bennett, 689 F.2d 1370, 1384 (11th Cir. 1982) ("There can be no duty, the breach of which is actionable, to do that which is beyond the power, authority, or means of the charged party.  One may be callously indifferent to the fate of prisoners and yet not be liable for their injuries.  Those whose callous indifference results in liability are those under a duty -- possessed of authority and means -- to prevent the injury.")

1    Defendant Singh and present the request to the MAR.  (Id.)  On February 21, 2019, the MAR

2    committee was presented with the request.  (Id.)

3        On March 5, 2019, Defendant Khoo informed Plaintiff that the request for services had

4    been denied because Defendants Mitchell and Singh found the screw was not falling out.  (Id.)

5        On June 18, 2019, Defendant Khoo ordered a CT scan and found that Plaintiff met all the

6    criteria due to the fractured screw.  (Id. at 9.)  Plaintiff received a second opinion from Dr.

7    Taggard who recommended revision surgery on August 28, 2019, and Defendant Khoo

8    submitted a request for services for Plaintiff to receive revision surgery on September 6, 2019.

9    (Id.)  On December 27, 2019, Defendant Khoo told Plaintiff that he would submit another

10   request for a follow up with Dr. Taggard.  (Id. at 10.)  The request was denied by Defendants

11   Song and Showalter because the request had already been denied by the SMART committee.

12   (Id.)  On January 8, 2020, Defendant Khoo refused to submit another request because her request

13   had just been denied.  (Id.)

14       Although Plaintiff alleges that Defendant Khoo did not submit a request for services in

15   May 2020 because he wanted to continue conservative approaches, this alone is insufficient to

16   state a claim based on the numerous attempts by Defendant Khoo to obtain revision surgery for

17   Plaintiff, and further, Plaintiff received a third neurosurgery consultation on November 6, 2020.

18   (Id. at 12.)  To state a claim, Plaintiff would need to show that the delay in receiving the third

19   consultation resulted in significant harm.  Hallett v. Morgan, 296 F.3d 732, 746 (9th Cir. 2002);

20   Wood, 900 F.2d at 1335; Shapley v. Nevada Board of State Prison Commissioners, 766 F.2d

21   404, 407 (9th Cir. 1984).  The second amended complaint contains no allegations by which the

22   Court could reasonably infer that Plaintiff suffered any significant harm due to any delay in

23   receiving that third consultation that could be attributed to Defendant Khoo's decision in May to

24   continue conservative treatment.  Plaintiff has failed to state a claim against Defendant Khoo

25   based on the denial of her revision surgery.

26       **b.    Defendant Antinello**

27       Plaintiff alleges that Defendant Antinello was deliberately indifferent by finding that

28   Plaintiff did not meet the InterQual criteria for surgery and by relying on the observations of

1   custody staff in making the decision.  Defendant Antinello noted the September 7, 2018 and

2   December 19, 2018 x-rays and the November 15, 2018 CT scan finding "no conclusive evidence

3   of loose or broken hardware."  (SAC at 7.)  At the time that Defendant Antinello interviewed

4   Plaintiff for her appeal, the x-ray and CT results did not find any loosening or failure of the

5   fusion.  Plaintiff argues that the September 7, 2018 demonstrated the failure of the implant, but

6   the results of this x-ray showed a "question of right S1 screen lucency raising the possibility of

7   loosening" and the subsequent x-ray and CT scan did not document any loosening or fracture of

8   the hardware.  (SAC at 6-7.)  While the September 7, 2018 x-ray raised a question of the failure

9   of the hardware, the subsequent x-ray and CT scan did not find any such failure.  Although there

10  was later an addendum added that included such findings, Plaintiff has not alleged any facts by

11  which it could be reasonably inferred that Defendant Antinello was aware of this addendum at

12  the time that she interviewed Plaintiff for her appeal.

13      Further, although Plaintiff contends that the custody observations that she had no

14  discernable difficulty ambulating were false, Plaintiff has not alleged any facts by which the

15  Court can find that Defendant Antinello was aware that the observations of custody staff were

16  incorrect or false.  Plaintiff has failed to allege facts sufficient to demonstrate that Defendant

17  Antinello was deliberately indifferent in addressing Plaintiff's need for revision surgery.

18  Plaintiff has failed to state a claim against Defendant Antinello based on the denial of her request

19  for revision surgery.

20      **c.    Defendants Mitchell, Song, Singh and Showalter**

21      Plaintiff alleges that Defendants are deliberately indifferent by requiring her to have

22  surgery by Dr. Segal, however it is clear from the complaint that he would not be the surgeon

23  performing her surgery.  The approval of the request for services specifically stated that Dr.

24  Ramberg would perform surgery.  Further, Plaintiff is not entitled to select the provider of her

25  choice and the second amended complaint fails to allege more than a difference of opinion

26  between the medical providers that is insufficient to state a claim.  "A difference of opinion

27  between a physician and the prisoner—or between medical professionals—concerning what

28  medical care is appropriate does not amount to deliberate indifference."  Snow v. McDaniel, 681

14

1   F.3d 978, 987 (9th Cir. 2012), overruled on other grounds by Peralta v. Dillard, 744 F.3d 1076

2   (9th Cir. 2014) (citing Sanchez, 891 F.2d at 242); Wilhelm, 680 F.3d at 1122-23 (citing Jackson

3   v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)).   Rather, a plaintiff is required to show that the

4   course of treatment selected was "medically unacceptable under the circumstances" and that the

5   defendant "chose this course in conscious disregard of an excessive risk to plaintiff's health."

6   Snow, 681 F.3d at 988 (quoting Jackson, 90 F.3d at 332).   Plaintiff has failed to state a claim

7   based on the approval of her revision surgery.

8       Liberally construed, Plaintiff has alleged that the decision to deny her revision surgery

9   were made or considered on appeal by Defendants Mitchell, Song, Singh and Showalter.

10  Plaintiff had two consultations with neurosurgeons who recommended that Plaintiff should

11  receive a revision surgery due to the hardware failure and Plaintiff's symptoms.   While a

12  difference of opinion between medical providers is not sufficient to state a claim, Sanchez, 891

13  F.2d at 242, Plaintiff has alleged sufficient facts to reasonably infer that her surgery was denied,

14  not based on whether it was medically necessary, but because there was a policy in place that

15  required her plate to have moved to qualify for surgery, see Colwell v. Bannister, 763 F.3d 1060,

16  1070 (9th Cir. 2014) (prison medical director could be held liable for denying need for cataract

17  surgery which optometrist had recommended).   While ultimately this may come down to a

18  difference of opinion between medical providers, at the pleading stage, the Court finds that

19  Plaintiff has stated a deliberate indifference claim against Defendants Mitchell, Song, Singh and

20  Showalter for denial of her revision surgery.

21      2.      Denial of Pain Medication

22      Plaintiff contends that Defendants Khoo, Mitchell, and Showalter were deliberately

23  indifferent by denying her Gabapentin, and that Defendants Mitchell and Showalter were

24  deliberately indifferent by denying her effective medication for her breakthrough episodes.

25  Plaintiff cannot state a claim based on her disagreement with the treatment that was provided,

26  Snow, 681 F.3d at 987; Wilhelm, 680 F.3d at 1122-23, and there are no facts alleged that the

27  medication that she was provided was medically unacceptable under circumstances.   Although

28  Plaintiff alleges that certain medications were contraindicated due to other medications that she

1  was taking, there are no allegations that Plaintiff suffered any adverse effects from taking any of
2  these specific medications.  Plaintiff's allegations are insufficient to demonstrate more than
3  possible medical malpractice which is insufficient to state a deliberate indifference claim based
4  on the failure to provide her with Gabapentin.

5       Further, although Plaintiff alleges that she was denied effective medication for
6  breakthrough episodes of pain, the second amended complaint is devoid of any allegations that
7  Plaintiff complained of such pain and was denied pain relief.  Rather, the complaint demonstrates
8  that on several occasions when she complained of breakthrough pain, she was prescribed
9  tramadol and Toradol.  (SAC at 19.)

10           **a.      Defendant Mitchell**

11      Plaintiff alleges Defendant Mitchell discontinued Gabapentin with no systemic
12  replacement and only topicals to address the pain from her broken hardware and increasing
13  neuropathy.  Plaintiff contends that Defendant Mitchell made no effort to find a suitable
14  replacement for her pain management and that she was told that Defendant Mitchell had denied
15  all pain management.

16       Liberally construed, Plaintiff alleges that Defendant Mitchell made the decision that her
17  long term Gabapentin be discontinued and he was involved in the pain committee that denied her
18  requests to be continued on the medication.  At the pleading stage this is sufficient to state a
19  claim for deliberate indifference.

20           **b.      Defendant Khoo**

21       The allegations in the complaint are insufficient to state a claim against Defendant Khoo
22  for failure to respond to Plaintiff's complaints of pain.  The Court is not required to accept as
23  true allegations that contradict exhibits attached to the complaint or matters properly subject to
24  judicial notice, or allegations that are merely conclusory, unwarranted deductions of fact, or
25  unreasonable inferences.  Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir.),
26  opinion amended on denial of reh'g, 275 F.3d 1187 (9th Cir. 2001); Daniels-Hall v. Nat'l Educ.
27  Ass'n, 629 F.3d 992, 998 (9th Cir. 2010).  Here, the gravamen of Plaintiff's complaint is that she
28  was denied her preferred pain medication, Gabapentin.  It is evident from the pleadings filed in

this action that Defendant Khoo addressed her complaints of pain and provided her with pain medication, although not the medication that she preferred.

In the first amended complaint, Plaintiff alleges that on August 22, 2019, Dr. Khoo started tapering Plaintiff off her Gabapentin and refused to prescribe a replacement pain medication.   ([FAC] at 8, 12.)   Dr. Khoo refused pain medication on September 6, 2019.   (Id. at 9.)  On December 27, 2019, Defendant Khoo informed Plaintiff that all narcotic pain management had been refused by Defendant Mitchell.[6]   (Id. at 10.)  On February 5, 2020, Defendant Khoo refused any narcotic pain medication due to the pain committee interdisciplinary note. (Id. at 11.)   Defendant Khoo provided her with Toradol which provided good relief.   (Id.)  On May 15, 2020, Defendant Khoo ordered Lidocaine patches once a day for Plaintiff's pain.   (Id.)  Defendant Khoo discontinued Plaintiff's Toradol injections without replacement and offered Plaintiff Lyrica.   (Id. at 13-14.) Plaintiff could not take the Lyrica because she was allergic so he said he would talk to the Defendant Mitchell about a Gabapentin order.   (Id. at 14.)

However, Plaintiff has deleted from the first amended complaint the prior allegations that demonstrated that Defendant Khoo was responsive to her requests for pain medication.   The September 1, 2020 screening order addressed the allegations in the original complaint.

Dr. Khoo informed Plaintiff on January 15, 2019 that he would submit a request for pain medication to the pain committee before he could enter any further orders.   (Compl. at 14.)   On January 12, 2019, Defendant Khoo refused to prescribe Tramadol for a pain episode, but during this time period Plaintiff was being prescribed morphine.   (Id. at 10, 12.)  Per the pain committee, her morphine began to be tapered off on January 22, 2019.   (Id. at 6, 15.)  On April 15, 2019, Plaintiff discussed her pain with Defendant Khoo and she was receiving Gabapentin which provided her with fair relief.   (Id. at 17.)  On August 22, 2019, Dr. Khoo started tapering Plaintiff off her Gabapentin.   (Id. at 7, 18.)  Dr. Khoo refused to increase Plaintiff's pain medication on September 6, 2019.   (Id. at 18.) On October 31, 2019, Defendant Khoo examined Plaintiff and ordered another week of Tramadol.   (Id.)   On December 27, 2019, Defendant Khoo informed Plaintiff that all pain management had been refused by Defendant Mitchell.   (Id. at 19.)

Plaintiff had been referred to mental health for alternative therapy and pain evaluation.   (Id. at 10.)  Defendant Khoo email her mental health provider on June 6, 2020, stating that based on how she was functioning and behaving during the day, his supervisors could not totally believe Plaintiff's complaints of pain.   (Id. at 11.)

On February 2, 2020, Defendant Khoo offered Plaintiff a Toradol injection which she received.   (Id. at 20.)  She was also taking Celebrex.   (Id.)  On February 5, 2020, Plaintiff was informed that she had been approved to see a neurologist for pain management.   (Id.)   Plaintiff received a consult with Dr. Malhorta on February 20, 2020, but he informed her he did not do pain management.   (Id.) When Plaintiff saw Defendant Khoo on May 15, 2020, he prescribed lidocaine patches once per day.   (Id. at 21.)  On May 27, 2020, a nurse informed Plaintiff

---

[6] Although based on Plaintiff's previous allegations, it appears that the pain committee did not discontinue all medication, but determined that Plaintiff would not be approved for opiates.

that Defendant Khoo could increase her lidocaine patches to twice a day. (Id.) On July 22, 2020, Defendant Khoo discontinued Toradol as contraindicated without ordering a replacement. (Id. at 22.)

Based on the complaint, the Court finds that Plaintiff's conclusory allegation that Defendant Khoo denied her all pain medication is not entitled to a presumption of truth. Plaintiff was receiving Enbrel, Celebrex, Tramadol, Toradol, and lidocaine patches and was referred to mental health for alternate therapies and for a pain management consult.

Further, Plaintiff has failed to include any factual allegations that Defendant Khoo was aware that her pain treatment was ineffective and it is clear from the original complaint, that additional pain medication was prescribed when Plaintiff had a flare up of her pain. Plaintiff cannot state a claim by deleting the previously alleged facts that demonstrate that her complaints of pain were addressed. It appears that Plaintiff disagrees with the medication that was provided, but a prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez, 891 F.2d at 242.

(ECF No. 18 at 13-14.)

Plaintiff alleges that in January 2020, in response to an email from her mental health provider that Defendant Khoo responded that Plaintiff's pain was not severe and she was faking it. (Compl. 11.) However, in her original complaint, Plaintiff alleged that the email stated "my supervisors mention to me that she can claim and cry in front of you, but how she is functioning the rest of the day and how she behaves the rest of the day, daytime, nighttime. We cannot go totally with her claim of severe pain. . . ." (Compl. at 21.) As Plaintiff was previously advised she cannot change the allegations that are favorable to the defendant in order to state a claim. (See ECF No. 18 at 12-13.) Plaintiff alleges that her mental health provider asked Defendant Khoo to help her get the relief that she needs. (SAC 11.) Defendant Khoo's response explaining the position of his supervisors that Plaintiff's allegations of severe pain were not consistent with the observations of custody staff is insufficient to demonstrate deliberate indifference, especially as here where Plaintiff was receiving medication for her pain.

Defendant Khoo did prescribe medication to address Plaintiff's complaints of pain and Plaintiff was receiving numerous medications and treatment for her pain and he submitted requests to the pain committee for her to be allowed to continue on Gabapentin that were denied. Plaintiff has failed to state a deliberate indifference claim against Defendant Khoo for the failure to prescribe Gabapentin.

1                c.    **Defendant Showalter**

2       Plaintiff alleges that Defendant Showalter was deliberately indifferent by denying her

3 medication, but the second amended complaint is devoid of any allegations that Defendant

4 Showalter denied Plaintiff any medication.  Plaintiff has failed to allege any facts to state a claim

5 against Defendant Showalter for the denial of pain medication.

6       To the extent that Plaintiff has previously alleged that Defendant Showalter was

7 deliberately indifferent by telling the pain committee that she had fallen and that she used

8 recreational drugs in prison to have them deny her request for opioid pain medication, Plaintiff

9 cannot state a claim based on the denial of opioid pain medication.  (ECF No. 18 at 17.)

10              3.    <u>Directions to Custody Staff</u>

11      Plaintiff alleges that custody staff were instructed to selectively document her activities

12 of daily living and pain to infer that she did not need surgery or pain management.  Plaintiff

13 states that the instruction was to report the observations by email rather than by the required

14 CDCR form.  However, the failure to make the observations on the form required by the state

15 regulations would not rise to the level of a constitutional violation.  <u>See</u> <u>Cousins v. Lockyer</u>, 568

16 F.3d 1063, 1070 (9th Cir. 2009) ("state departmental regulations do not establish a federal

17 constitutional violation"); <u>Devereaux v. Abbey</u>, 263 F.3d 1070, 1075 (9th Cir. 2001) (mere

18 allegation that state regulations were violated is insufficient to serve as basis for a claim under

19 section 1983.)  Further, the allegation that custody staff were instructed to document Plaintiff's

20 activities of daily living does not lead to the rational inference that the purpose was to deny her

21 request for surgery, rather than to consider the veracity of her complaints of pain by observations

22 of Plaintiff engaging in her normal daily activities.  Plaintiff has failed to state a claim based on

23 directing custody staff to document their observations of Plaintiff's daily activities.

24          **C.    Medical Malpractice**

25      Plaintiff also alleges that the defendants committed medical malpractice by breaching

26 their duty of care to her.  Medical malpractice arises under state law and therefore, California law

27 governs this claim.

28      The California Government Claims Act requires that a tort claim against a public entity

1    or its employees be presented to the California Victim Compensation and Government Claims

2    Board no more than six months after the cause of action accrues.  Cal. Gov't Code §§ 905.2, 910,

3    911.2, 945.4, 950-950.2.  Presentation of a written claim, and action on or rejection of the claim

4    are conditions precedent to suit.  State v. Superior Court of Kings County (Bodde), 32 Cal.4th

5    1234, 1239 (Cal. 2004); Shirk v. Vista Unified School District, 42 Cal.4th 201, 209 (2007).  To

6    state a tort claim against a public employee, a plaintiff must allege compliance with the

7    California Tort Claims Act.  Cal. Gov't Code § 950.6; Bodde, 32 Cal.4th at 1244.  "[F]ailure to

8    allege facts demonstrating or excusing compliance with the requirement subjects a compliant to

9    general demurrer for failure to state a cause of action."  Id. at 1239.

10          Here, Plaintiff's alleges that she submitted a claim form that was denied on April 1, 2020.

11          Under California law, "[t]he elements of a medical malpractice claim are (1) the duty of

12   the professional to use such skill, prudence, and diligence as other members of his profession

13   commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection

14   between the negligent conduct and resulting injury; and (4) actual loss or damage resulting from

15   the professional's negligence."   Avivi v. Centro Medico Urgente Medical Center, 159

16   Cal.App.4th 463, 468, n.2 (2008) (internal quotations and citation omitted); Johnson v. Superior

17   Court, 143 Cal.App.4th 297, 305 (2006).

18          Plaintiff contends that all the named defendants had a duty to provide care and they

19   breached this duty by the acts alleged in the second amended complaint.  Plaintiff alleges that

20   she was harmed by the failure to approve the revision surgery and leaving the loose and broken

21   hardware at the failed fusion level to support her lumbar spine which is cause unrelieved acute

22   and chronic pain, insomnia, decreased activities of daily living, difficulty concentrating,

23   depression, anxiety, and fear of medical abandonment.  Plaintiff's allegations are sufficient at the

24   pleading stage to state a medical malpractice claim against Defendants Mitchell, Singh,

25   Showalter, and Song based on the denial of her revision surgery.

26          Plaintiff's allegation that Defendant Mitchell directed that she be taken off Gabapentin is

27   sufficient to state a claim.  However, Plaintiff's allegations that the defendants did not provide

28   appropriate pain management are insufficient to state a medical malpractice claim against any

1    other named defendant.  Plaintiff has failed to allege any facts that the medication that she

2    received for her pain was not within the standard of care.  While the failure of a physician to

3    provide necessary medication and treatment is medical malpractice, Watson v. State of

4    California, 21 Cal.App.4th 836, 845 (1993), as discussed above, Plaintiff was provided with

5    medication to treat her pain and the second amended complaint contains no allegations by which

6    the Court can reasonably infer that the failure to authorize Plaintiff's preferred medications was

7    against the standard of care or caused Plaintiff resulting injury and actual loss or damage due to

8    prescribing other medications to treat Plaintiff's pain.  Finally, although Plaintiff does allege that

9    on occasion she was provided medication that was contraindicated due to other medication that

10    she was taking, there are no allegations that she suffered any injury or adverse effects from those

11    medications.  Plaintiff has failed to state a cognizable claim for medical malpractice against any

12    other named defendant due to the failure to provide her with Gabapentin or narcotic pain

13    medication to treat her pain.

14          **D.**    **Injunctive Relief**

15          Plaintiff seeks injunctive relief in this action.  Federal courts are courts of limited

16    jurisdiction and in considering a request for preliminary injunctive relief, the Court is bound by

17    the requirement that as a preliminary matter, it have before it an actual case or controversy.  City

18    of Los Angeles v. Lyons, 461 U.S. 95, 102 (1983); Valley Forge Christian Coll. V. Ams. United

19    for Separation of Church and State, Inc., 454 U.S. 464, 471 (1982).  If the Court does not have an

20    actual case or controversy before it, it has no power to hear the matter in question.  Id.  Requests

21    for prospective relief are further limited by 18 U.S.C. § 3626(a)(1)(A) of the Prison Litigation

22    Reform Act ["PLRA"], which requires that the Court find the "relief [sought] is narrowly drawn,

23    extends no further than necessary to correct the violation of the Federal right, and is the least

24    intrusive means necessary to correct the violation of the Federal right."

25          Here, as Plaintiff was previously advised much of the injunctive relief she is seeking goes

26    beyond what would be allowed under the PLRA as it is not narrowly tailored to address the

27    violations of the rights at issue in this action and is too intrusive.  Plaintiff was previously

28    informed that the Court cannot issue injunctive relief regarding individuals who are not parties to

this action.  .  See Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 234-35 (1916); Zepeda v. U.S. I.N.S., 753 F.2d 719, 727-28 (9th Cir. 1983).  Further, an injunction cannot be based on speculative injury.  Caribbean Marine Servs. Co., Inc. v. Baldridge, 844 F.2d 668, 674-75 (9th Cir. 1988).  Therefore, the Court cannot grant broad requests for relief or requests based on the possibility of an injury, such as there be no retaliation for filing this action.

**IV.**

**CONCLUSION AND RECOMMENDATION**

For the reasons discussed, Plaintiff has stated a deliberate indifference claim against Defendants Mitchell, Singh, Showalter, and Song for denial of her revision surgery, and against Defendant Mitchell for ordering that her Gabapentin be terminated, and a medical malpractice claim against Defendants Mitchell, Singh, Showalter, and Song for denial of her revision surgery and against Defendant Mitchell for directing her Gabapentin be terminated.  However, Plaintiff has failed to state any other cognizable claims for a violation of her constitutional rights or state law.

Plaintiff was previously notified of the applicable legal standards and the deficiencies in her pleadings, and despite guidance from the Court, Plaintiff's second amended complaint is largely identical to the original and first amended complaint.  Based upon the allegations in Plaintiff's original, first, and second amended complaint, the Court is persuaded that Plaintiff is unable to allege any additional facts that would support a claim for deliberate indifference in violation of the Eighth Amendment, and further amendment would be futile.  See Hartmann v. CDCR, 707 F.3d 1114, 1130 (9th Cir. 2013) ("A district court may deny leave to amend when amendment would be futile.")  Based on the nature of the deficiencies at issue, the Court finds that further leave to amend is not warranted.  Lopez v. Smith, 203 F.3d 1122, 1130 (9th. Cir. 2000); Noll v. Carlson, 809 F.2d 1446-1449 (9th Cir. 1987).

Accordingly, IT IS HEREBY RECOMMENDED that:

1.    This action proceed on Plaintiff's second amended complaint, filed December 21, 2020, against Defendants Mitchell, Singh, Showalter, and Song for denial of her revision surgery, and against Defendant Mitchell for directing that her Gabapentin

be terminated in violation of the Eighth Amendment and a medical malpractice claim against Defendants Mitchell, Singh, Showalter, and Song for denial of her revision surgery and against Defendant Mitchell for directing that her Gabapentin be terminated;

2.     Defendants Khoo and Antinello be dismissed from this action for Plaintiff's failure to state a cognizable claim against them; and

3.     All other claims be dismissed from this action for failure to state a claim.

This findings and recommendations is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **thirty (30) days** of service of this recommendation, Plaintiff may file written objections to this findings and recommendations with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). Plaintiff is advised that failure to file objections within the specified time may result in the waiver of rights on appeal.  Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **January 4, 2021**

UNITED STATES MAGISTRATE JUDGE